**SEALED**

FILED

December 7, 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
By:        MR

Deputy

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | **Case No: SA:22-CR-00659-JKP** |
| Plaintiff | |
| v | **INDICTMENT** |
| (1) KUBA ZAROBKIEWICZ | <u>Count 1</u>: 18 U.S.C. § 371 – Conspiracy to Pay and Receive Health Care Kickbacks; |
| (2) ANTHONY FERMIN | <u>Counts 2-5</u>: 42 U.S.C. § 1320a-7b(2)(a) – Payment of Illegal Healthcare Kickbacks; |
| (3) FARRUKH MIRZA | <u>Counts 6–9</u>: 42 U.S.C. § 1320a-7b(1)(a) – Receipt of Illegal Healthcare Kickbacks; |
| Defendants | <u>Count 10</u>: 18 U.S.C. §§ 1347, 1349 – Conspiracy to Commit Health Care Fraud; |
| | <u>Counts 11–16</u>: 18 U.S.C. § 1349 – Health Care Fraud; |
| | <u>Counts 17–22</u>: 18 U.S.C. §§ 1028A and 2 – Aggravated Identity Theft and Aiding and Abetting. |

## INDICTMENT

The Grand Jury charges:

### General Allegations

At all times material to this Indictment, unless otherwise specified:

### The Defendants and Related Entities

1.      Defendants KUBA ZAROBKIEWICZ and ANTHONY FERMIN were business partners and the owners/operators of multiple pharmacy businesses including PharMax LLC (d/b/a

iPharmacy), Elevate Pharmacy, and ProCare Biomedical Repair, LLC (the "pharmacy companies").

2.       The PharMax and Elevate Pharmacy businesses were located in San Antonio, Texas and were within the Western District of Texas.

3.       FARRUKH MIRZA was the owner and operator of multiple telemarketing businesses, including Miamir and BeSpoke Unlimited (the "telemarketing companies").

4.       DOCTOR 1 was a medical doctor licensed in Georgia.

5.       DOCTOR 2 was a medical doctor licensed in New York.

### The Medicare Program and Durable Medical Equipment

6.       The Medicare Program ("Medicare") was a federal healthcare program providing benefits to individuals who were sixty-five (65) years of age or older, or disabled.  Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.  Medicare was a "healthcare benefit program" as defined by Title 18, United States Code, Section 24(b) and was primarily funded by Federal tax receipts.

7.       Medicare was subdivided into multiple Parts.  Medicare Part A covered health services provided by hospitals, skilled nursing facilities, hospices, and home health agencies.  Medicare Part B covered physician services and outpatient care, including an individual's access to durable medical equipment ("DME"), such as orthotic devices and wheelchairs.  Parts A and B were known as the "original fee-for-service" Medicare program, in which Medicare paid health care providers fees for services rendered to beneficiaries.

8.       Individuals who qualified for Medicare benefits were commonly referred to as Medicare "beneficiaries."  Each beneficiary was given a Medicare identification number.

9.      Orthotic devices were a type of DME that included rigid and semi-rigid devices such as hip braces, knee braces, back braces, and hand braces.  The orthotic devices involved in this scheme required a signed prescription or order from a medical practitioner in order to be valid for reimbursement from Medicare.

10.     DME companies, physicians, and other healthcare providers that provided services to Medicare beneficiaries were referred to as Medicare "providers."  To participate in Medicare, providers were required to submit an application in which the providers agreed to comply with all Medicare-related laws and regulations.  If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number."  A healthcare provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for medically necessary services rendered to beneficiaries.

11.     When enrolling, Medicare providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement.  To receive Medicare funds, enrolled providers agreed to and were required to abide by various laws and regulations, including Title 42 U.S.C. § 1320a-7b – also referred to as the Anti-Kickback Statute.  Providers were given access to Medicare manuals and services bulletins describing billing procedures, rules, and regulations.

12.     Medicare reimbursed DME companies and other healthcare providers for services rendered to beneficiaries.  To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare, either directly or through a billing company.

13.     A Medicare claim for DME reimbursement was required to set forth, among other things, the beneficiary's name and unique Medicare identification number, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name

and unique physician identification number of the physician who prescribed or ordered the equipment.

14.     Medicare Part B claims for DME reimbursement were required to be medically necessary as certified by a medical practitioner.  As such, Medicare required a prescription/order signed by a medical practitioner for a DME product claim to be reimbursed.

## COUNT ONE
### Conspiracy to Pay and Receive Health Care Kickbacks
### (18 U.S.C. § 371 and 42 U.S.C. §  1320a-7b)

15.     Count One incorporates and realleges all paragraphs of this Indictment by reference as though fully set forth herein.

16.     From in or around August 2020 through in or around November 2021, in the Western District of Texas, and elsewhere, the defendants,

KUBA ZAROBKIEWICZ (1),
ANTHONY FERMIN (2),
and
FARRUKH MIRZA (3)

did knowingly and willfully combine, conspire, confederate and agree with each other and with others, known and unknown to the Grand Jury, to commit certain offenses against the United States, that is,

a.      to violate Title 42, United States Code, Section 1320a-7b(b)(1), by knowingly and willfully soliciting and receiving remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for the purchasing, leasing, ordering and arranging for and recommending the purchasing, leasing and ordering of any good, item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare;

and

b.      to violate Title 42, United States Code, Section 1320a-7b(b)(2), by knowingly and willfully offering and paying remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for the purchasing, leasing, ordering and arranging for and recommending the purchasing, leasing and ordering of any good, item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare.

## Purpose of the Conspiracy

17.    It was a purpose of the conspiracy for defendants KUBA ZAROBKIEWICZ and ANTHONY FERMIN to unlawfully enrich themselves and their pharmacy companies by paying defendant FARRUKH MIRZA and his telemarketing companies illegal kickbacks in exchange for prescriptions/orders for DME brace products signed by DOCTOR 1 and DOCTOR 2 .

## Manner and Means of the Conspiracy

18.    Defendant KUBA ZAROBKIEWICZ and ANTHONY FERMIN's pharmacy companies were registered Medicare provider companies each with unique provider identification numbers.

19.    Defendant KUBA ZAROBKIEWICZ was listed on the Medicare Application and Agreement for PharMax and Procare.  Defendant ANTHONY FERMIN was listed on the Medicare Application and Agreement for Procare and Elevate.   Defendants KUBA ZAROBKIEWICZ and ANTHONY FERMIN therefore certified that they were aware of and agreed to follow all Medicare rules and regulations – including the Anti-Kickback Statute and the requirement that all DME products be medically necessary to qualify for reimbursement.

20.     Defendants KUBA ZAROBKIEWICZ and ANTHONY FERMIN agreed with Defendant FARRUKH MIRZA to pay Defendant MIRZA and his telemarketing companies in return for sending signed prescription/orders for DME brace products to the pharmacy companies owned/operated by Defendants ZAROBKIEWICZ and FERMIN.

21.     Defendant FARRUKH MIRZA's telemarketing companies employed numerous individuals to call Medicare beneficiaries.  At least some of these calls were "cold calls", meaning that the beneficiaries were contacted despite having no previous relationship with the telemarketing companies, the pharmacy companies, or their purported services.

22.     During the telephone call, employees of the telemarketing companies would attempt to confirm the beneficiaries' unique Medicare identification number and push the beneficiary to accept a "free" orthotic DME brace product.  The telemarketing company employees would then attempt to connect the beneficiary with a medical practitioner, either through adding the doctor to the ongoing call or having the doctor call back at a later time.  In almost all cases, this would be either DOCTOR 1 or DOCTOR 2.

23.     DOCTOR 1 or DOCTOR 2 would conduct a short phone conversation with the beneficiary, after which the doctor would write a prescription/order for a DME brace product without regard for whether the product was medically necessary.   In at least some instances, beneficiaries were sent a brace even though they did not have any conversation whatsoever with any medical provider.

24.     The prescription/order produced by this process would then be sent from the prescribing doctor back to the telemarketing company.  The beneficiary was not informed that the prescription/order would be sent to the telemarketing company and was not given any choice or input as to what company would eventually provide the brace.

25.     The telemarketing company would then send the signed prescription/order to Defendants KUBA ZAROBKIEWICZ and ANTHONY FERMIN and their pharmacy companies. In some instances, the telemarketing companies would directly send the signed prescriptions/orders to a medical billing company utilized by the pharmacy companies. Defendants KUBA ZAROBKIEWICZ and ANTHONY FERMIN would then send and cause to be sent an unwanted and medically unnecessary DME brace product to the beneficiary through their pharmacy companies.

26.     Defendants KUBA ZAROBKIEWICZ and ANTHONY FERMIN then used their pharmacy companies to bill Medicare for these unwanted and medically unnecessary DME products.

27.     Between approximately August of 2020 and November of 2021, Defendants KUBA ZAROBKIEWICZ and ANTHONY FERMIN paid Defendant FARRUKH MIRZA and his telemarketing companies approximately Two Million dollars in illegal kickbacks in exchange for signed prescriptions/orders for DME brace products.

28.     Between approximately August of 2020 and November of 2021, Defendants KUBA ZAROBKIEWICZ and ANTHONY FERMIN and their pharmacy companies billed Medicare about $14.5 Million dollars for medically unnecessary brace products referred via illegal kickbacks, of which about $7 Million was actually paid.

### Overt Acts

29.     In furtherance  of the conspiracy, and to accomplish its object and purpose, the conspirators committed and caused to be committed, in the San Antonio Division of the Western District of Texas, and elsewhere, the following overt acts:

a.      On or about September 14, 2020, Defendant KUBA ZAROBKIEWICZ sent and caused to be sent a wire transfer in the amount of $10,500 from a business account he controlled to Miamir.

b.      On or about October 9, 2020, Defendant KUBA ZAROBKIEWICZ sent and caused to be sent a wire transfer in the amount of $50,000 from a business account he controlled to Miamir.

c.      On or about January 12, 2021, Defendants KUBA ZAROBKIEWICZ and ANTHONY FERMIN sent and caused to be sent a wire transfer in the amount of $30,000 from the business account of Procare Biomedical Repair, LLC to Miamir.

d.      On or about July 30, 2021,  Defendants KUBA ZAROBKIEWICZ and ANTHONY FERMIN sent and caused to be sent a wire transfer in the amount of $50,000 from the business account of Elevate Pharmacy LLC to BeSpoke Unlimited.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO - FIVE
### Offer and Payment of Illegal Healthcare Kickbacks
### [42 U.S.C. § 1320a-7b (b)(2)(a) and 18 U.S.C. § 2]

30.      Counts Two through Five incorporate and reallege all paragraphs of this Indictment by reference as though fully set forth herein.

31.      On or about the dates set forth below, in the Western District of Texas, and elsewhere, the defendants,

KUBA ZAROBKIEWICZ (1)
and
ANTHONY FERMIN (2)

in violation of Title 42, United States Code § 1320a-7b (b)(2)(a), aided and abetted by each other and others known and unknown to the Grand Jury, knowingly and wilfully, offered to pay and paid any remuneration, including any kickback, bribe, or rebate, directly or indirectly, overtly or covertly, in cash or in kind to Defendant FARRUKH MIRZA and his companies and entities, in return for prescriptions/orders for DME brace products, which would be paid for in whole or in part by Medicare, a Federal health care program, including, but not limited to, the following dates and amounts:

| Count | Date | Payment Amount |
|-------|------|----------------|
| 2 | 9/14/2020 | $10,500 |
| 3 | 10/9/2020 | $50,000 |
| 4 | 1/12/2021 | $30,000 |
| 5 | 7/30/21 | $50,000 |

## COUNTS SIX - NINE
### Solicitation and Receipt of Illegal Healthcare Kickbacks
### [42 U.S.C. § 1320a-7b (b)(1)(a) and 18 U.S.C. § 2]

32.    COUNTS SIX through NINE incorporate and reallege all paragraphs of this Indictment by reference as though fully set forth herein.

33.    On or about the dates set forth below, in the Western District of Texas, and elsewhere, Defendant

### FARRUKH MIRZA (3)

in violation of Title 42, United States Code § 1320a-7b (b)(1)(a), aided and abetted by others known and unknown to the Grand Jury, knowingly and wilfully, solicited and received any remuneration, including any kickback, bribe, or rebate, directly or indirectly, overtly or covertly,

in cash or in kind from Defendants KUBA ZAROBKIEWICZ, ANTHONY FERMIN, and their companies and entities, in return for prescriptions/orders for DME brace products, which would be paid for in whole or in part by Medicare, a Federal health care program, including, but not limited to, the following dates and amounts:

| Count | Date | Payment Amount |
|-------|------|----------------|
| 6 | 9/14/2020 | $10,500 |
| 7 | 10/9/2020 | $50,000 |
| 8 | 1/12/2021 | $30,000 |
| 9 | 7/30/21 | $50,000 |

**COUNT TEN**
**Conspiracy to Commit Health Care Fraud**
**[18 U.S.C. §§ 1347, 1349]**

34.     COUNT TEN incorporates and realleges all paragraphs of this Indictment by reference as though fully set forth herein

35.     From in or around August 2020 through in or around November 2021, in the Western District of Texas, and elsewhere, the defendants,

KUBA ZAROBKIEWICZ(1),
ANTHONY FERMIN (2),
and
FARRUKH MIRZA (3),

knowingly, intentionally, and unlawfully combined, conspired, confederated and agreed with each other and with others known and unknown to the Grand Jury to violate Title 18, United States Code, § 1347, namely, to execute a scheme and artifice to defraud Medicare, a health care benefit program as defined in Title 18, United States Code § 24(b), and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and

under the control of said health care benefit program in connection with the delivery of and payment for health care benefits, items, and services, by creating and submitting claims for DME brace products which were medically unnecessary and otherwise fraudulent through the actions set forth in the "Manner and Means" section of Count One, which are incorporated herein as if fully restated, all in violation of Title 18, United States Code, § 1349.

## COUNTS ELEVEN - SIXTEEN
## Health Care Fraud and Aiding and Abetting
## [18 U.S.C. § 1347 and 18 U.S.C. § 2]

36.     Counts ELEVEN through SIXTEEN incorporate and reallege all paragraphs of this Indictment by reference as though fully set forth herein

37.     On or about the dates set forth below, in the Western District of Texas, and elsewhere, the defendants,

KUBA ZAROBKIEWICZ (1),
ANTHONY FERMIN (2),
and
FARRUKH MIRZA (3)

aided and abetted by each and by others known and unknown to the Grand Jury, knowingly and willfully executed and attempted to execute a scheme and artifice to a defraud health care benefit program; or to obtain by means of false and fraudulent pretenses, representations and promises, money and property owned by or under the custody and control of a health care benefit program defined in Title 18, United States Code, § 24(b), specifically the Medicare program by creating and submitting claims for DME brace products that were medically unnecessary and otherwise fraudulent through the actions set forth in the "Manner and Means" section of Count One, which are incorporated herein as if fully restated.  The executions of this scheme include, but are not limited to, the claims listed below:

| Count | Beneficiary | Billing Entity | Date of Claim | Amount of Claim |
|---|---|---|---|---|
| 11 | I. T. | PharMax | 11/13/2020 | $1,202 |
| 12 | L. H. | PharMax | 11/25/2020 | $1,766 |
| 13 | P. L. | Elevate Pharmacy LLC | 5/4/2021 | $1,202 |
| 14 | E. W. | Elevate Pharmacy LLC | 4/26/2021 | $1,202 |
| 15 | L. H. | Procare Biomedical | 7/14/2021 | $1,202 |
| 16 | G. F. | Procare Biomedical | 7/19/2021 | $627 |

All in violation of Title 18, United States Code § 1347,

## COUNTS SEVENTEEN – TWENTY TWO
### Aggravated Identity Theft and Aiding and Abetting
### [18 U.S.C. § 1028A, 18 U.S.C. § 2]

38.     Counts SEVENTEEN through TWENTY-TWO incorporate and reallege all paragraphs of this Indictment by reference as though fully set forth herein

39.     On or about the dates set forth below, in the Western District of Texas, and elsewhere, the defendants,

KUBA ZAROBKIEWICZ (1),
ANTHONY FERMIN (2),
and
FARRUKH MIRZA (3)

individually, and by aiding and abetting others known and unknown to the Grand Jury did knowingly, without lawful authority, and in violation of Title 18, United States Code, Section 1028A(a)(1), used, or caused others acting for them to use, one or more means of identification of multiple complainants, namely, their names, dates of birth, addresses, and insurance billing information, as set forth below.  The Defendant's unlawful use of the means of

identification was done during and in relation to the crime of health care fraud in violation of Title

18, United States Code, Section 1347, as set forth in Counts Eleven through Sixteen above.

| Count | Beneficiary | Billing Entity | Date of Claim | Personal Identifying Information Used |
|-------|-------------|----------------|---------------|----------------------------------------|
| 17 | I. T. | PharMax | 11/13/2020 | Name, date of birth, address, Medicare account number |
| 18 | L. H. | PharMax | 11/25/2020 | Name, date of birth, address, Medicare account number |
| 19 | P. L. | Elevate Pharmacy LLC | 5/4/2021 | Name, date of birth, address, Medicare account number |
| 20 | E. W. | Elevate Pharmacy LLC | 4/26/2021 | Name, date of birth, address, Medicare account number |
| 21 | L. H. | Procare Biomedical | 7/14/2021 | Name, date of birth, address, Medicare account number |
| 22 | G. F. | Procare Biomedical | 7/19/2021 | Name, date of birth, address, Medicare account number |

## NOTICE OF UNITED STATES OF AMERICA'S DEMAND FOR FORFEITURE
### [*See* Fed. R. Crim. P. 32.2]

### I.
### Health Care Kickback Violations and Forfeiture Statute

**[Title 18 U.S.C. § 371 and Title 42 U.S.C. § 1320a-7b(b)(1),
subject to forfeiture pursuant to Title 18 U.S.C. § 982(a)(7)]**

As a result of the foregoing criminal violations set forth in Counts One through Nine, the

United States of America gives notice to Defendants, of its intent to seek the forfeiture of the below

described properties upon conviction and pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. §

982(a)(7), which states:

> **Title 18 U.S.C. § 982.  Criminal forfeiture**
> **(a)(7)** The court, in imposing sentence on a person convicted of a Federal
> health care offense, shall order the person to forfeit property, real or
> personal, that constitutes or is derived, directly or indirectly, from gross
> proceeds traceable to the commission of the offense.

### II.

### Health Care Fraud Violations and Forfeiture Statute

**[Title 18 U.S.C. §§ 1347 and 1349, subject to forfeiture pursuant to Title 18 U.S.C. §
981(a)(1)(C), made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c)]**

As a result of the foregoing criminal violations set forth in Counts Ten through Sixteen,

the United States of America gives notice to the Defendants of its intent to seek the forfeiture of

the property described below upon conviction pursuant to Fed. R. Crim. P. 32.2 and to Title 18

U.S.C. 981(a)(1)(C) , made applicable to criminal forfeiture by Title 28 U.S.C. § 2461, which

states:

> **Title 18 U.S.C. § 981. Civil forfeiture**
>
> **(a)(1)** The following property is subject to forfeiture to the United States:
> * * *

**(C)** Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section ... or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

Health Care Fraud is an offense constituting "specified unlawful activity" as defined in Title 18 U.S.C. § 1956(c)(7).

**Title 28 U.S.C. § 2461.**

**(c)** If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure...

This Notice of Demand for Forfeiture includes but is not limited to the properties described below in Paragraphs III-IV.

### III.
### Money Judgment

**Money Judgment**: A sum of money which represents the proceeds derived, directly or indirectly, as a result of the violations set forth above for which the Defendants are liable.

### IV.
### Substitute Assets

If any of the property described above as being subject to forfeiture for the violations set forth above, as a result of any act or omission of the Defendants:

a.    cannot be located upon the exercise of due diligence;
b.    has been transferred or sold to, or deposited with, a third party;
c.    has been placed beyond the jurisdiction of the court;
d.    has been substantially diminished in value; or
e.    has been commingled with other property which cannot be divided without difficulty;

**Indictment – Page 15**

it is the intent of the United States of America to seek forfeiture of any other property, up to the

value of said money judgment, as substitute assets pursuant to Title 21 U.S.C. § 853(p) and Fed.

R. Crim. P. 32.2(e)(1).


                                                        A TRUE BILL.


                                                        FOREPERSON OF THE GRAND JURY


ASHLEY HOFF
UNITED STATES ATTORNEY

By: _____
       FOR JUSTIN CHUNG
       Assistant United States Attorney


**Indictment – Page 16**